Good morning, Ben Coleman for Appellant Eric Schmidt. I'd like to start with the expert testimony issue. In Vallejo, which was an opinion written by Judge Wardlaw, this court held that in a non-complex, non-conspiracy case, the government cannot introduce testimony about the methods and structures of drug trafficking organizations under Rule 403. That rule was reaffirmed over and over and over again in cases like Varela-Rivera, McGowan, and Pineda-Torres, and that's been the law of this circuit for over two decades. In this case, the district court violated that rule when it permitted the government to introduce that type of expert testimony in this non-complex, non-conspiracy case. And for that reason, and given that the government has not articulated a developed harmless error argument, this court should reverse the conviction in this case. Is that objected to at the time? It was. The government concedes that the Rule 403 objection was preserved, and I'm focusing now on the Rule 403 objection, and that was what Vallejo based its decision on, was the Rule 403. Let me ask this, Mr. Coleman. Those cases were about the structure of the criminal organization, whereas I understand this expert testimony to be more about how mules are used and how they process things to the males. Isn't there a distinction between those two things? Well, I think there are two responses. Number one, I think the expert testified as to both, and I'll describe that in a second. I also think that Vallejo and in the subsequent cases, this court has kind of made it clear that they're all kind of the same thing, whether you want to call it a structure or methods. All of that is excluded. In this case, what the expert did is, with respect to the structure of the organization, he said that these are usually international cartels that are mostly based in Mexico, and then they're distributed to Los Angeles, which he called a hub, and then that there were district managers in Los Angeles that would then farm the drugs out to other parts of the country. So he gave that sort of structure testimony, and then in addition, he gave the modus operandi testimony in the sense that this is the way they package them. This is what they usually do. They don't put an address. They wanted to get to the location, but they want to disguise who they are that's sending them. And do you think that testimony runs afoul of Vallejo or not? I do. I think that it's a similar situation in Vallejo and these other cases. For example, what they would do in those cases, they would say things like, the person who's driving the drugs isn't the one who loads them up, and this is the way they load them up, and then the driver takes the car, and then he brings it over, and he usually only drops it off at a location where nobody can discover where exactly the drop house is, and things like that. They did the exact same thing in those cases. They were not... Let me ask you this, because part of the contentions in this trial were about Mr. Schmidt, the way that he packaged this packaging, and it was sent to New York. Why isn't that relevant or helpful case-specific testimony, well, rather general testimony about a modus operandi that can apply here as to how the packaging was done here in a way that might suggest knowledge that drugs were inside that packaging as opposed to something else? Well, I think that... I think what the Vallejo type of cases say is, there are a couple things, that number one, the relevance to the extent that it is relevant and probative is limited, particularly when you don't have any connection that this person is a part of this type of organization. That's number one. Number two, I mean, the point of Rule 403 is, well, to the extent that there maybe is some relevance and probative value there, it's just outweighed by the prejudice, which is that the jurors now think that maybe he's a district manager of some large-scale international drug cartel, when there's no evidence that he is in any way, shape, or form that type of heavy hitter. Yeah, so suppose we agree with you that that was overkill. How is, in light of the evidence that the drugs came from an international cartel, given that they were stamped with the term Popeye and they were tracked from an IP address in Mexico, how is it prejudicial? I mean, we had that other evidence. Well, I think the prejudicial aspect is when they then start to link Mr. Schmidt to potentially being a district manager or part of this hub in Los Angeles that is sort of repeatedly sending drugs across the country. What testimony would you point to to say that there was some link to him being a district manager of some kind? Well, I think that the expert testified that when these things go to Los Angeles, there's then a district manager who decides where to send them and things of that sort. So that the impression that's being created is that potentially Mr. Schmidt is just that type of person, that he's a somewhat high-level member of this organization deciding where to send the drugs and things like that. So I think the expert's testimony supplied that. Well, didn't he stipulate or acknowledge that he committed the acts of wrapping it and mailing it? Correct, which is why I think that... Getting back to Judge Wardlaw's question, it's hard to say that, even assuming that there might have been a bit of overreach here in admitting the expert's testimony, I don't really understand your argument about why it's prejudicial. Well... I mean, it was wrapped in kind of an odd way. I mean, if somebody asked me to mail a package, you know, I don't think I would wrap it in multiple ways with special wrapping, you know, plastic galore. Okay. That's kind of... It's just kind of odd. I mean, you know, that's... I guess I have a few responses. I hear you. I hear you. But in a lot of these cases, these types of cases, this court has found harmful error. And it's simultaneously acknowledging that, you know, there was strong evidence in the case and the defense was not necessarily compelling. But, you know, in some of these cases, the drugs are hidden, where with this court has found harmful error, the drugs are hidden in gas tanks so that the car can only travel a few miles. I mean, there was one case, an in-bank case, Velarde Gomez, that Judge Wardlaw had written, where the defendant's story was really not very strong. I mean, he claimed that he was with a prostitute in Mexico for 20 minutes when the drugs were hidden in the car. That was his testimony. And I think what the point is, and if you go back to like the landmark harmless error case, which is Kodiakos, is that when a defendant gets up and testifies, look, I didn't have the guilty knowledge, it's not for this court to evaluate the competing testimony and decide who's credible and who's not credible. That is something for the jury to do. And the defendant is supposed to have his fair shot in presenting his testimony to the jury so that they can evaluate his credibility. And so even if this court, looking at the cold record and the facts, says, you know, I just don't know if his story is believable, that's really not part of the harmless error analysis. That is for the jury to determine. And I guess from our perspective, there are things that the government does that, I mean, I would find somewhat lacking credibility. And I'll just take for an example in this case. They don't record the interrogation. Although we've got 8 and 10-year-olds who have phones and record everything that goes on every second of the day. And this is a major thing that they're doing. They're interrogating Mr. Schmidt, and nobody can think to turn on their cell phone and record the interrogation. And then the notes are sloppy as to what he exactly said in the interrogation. And so, you know, from a defense perspective, and in this case, we sit there and say, well, that doesn't sound, you know, like the way normal people would act in this situation. And so the same thing that can be said about Mr. Schmidt can be said about the government in this case. And I understand that the court may have problems with his story. But he is entitled to have the jury make that determination. And if there is an error in the case, and the government has not really offered a developed harmless error argument, we think they've waived it. But even if they haven't waived it, or the court excuses the waiver, we think that the jury should have been able, without any errors in the case, to determine whether Mr. Schmidt's story was credible. I still have five minutes left. If there were no other questions, I would save the remaining time. Thank you. Good morning, Your Honors, and may it please the court. Jenna Williams on behalf of the United States. I'll begin with the expert testimony issue. The government did not present expert testimony that was described in VA Health, Drug Trafficking Organization testimony. The whole way the court has described Drug Trafficking Organization testimony is testimony that's detached from the evidence of the case, extrapolated from broader law enforcement knowledge. And the whole problem with that is that the government would then use it to prove knowledge of the defendant. It would say, because, as the court explicitly puts it in these cases, the argument is, because defendant was part of this big drug trafficking organization that our expert has described, therefore he knew that there were drugs in this car or this package or whatever it may be. That is not the argument that the government ever made here. And it's not the type of testimony presented. The government argued that the defendant knew that there were drugs in this package because of how he packaged it. Because he received a saran-wrapped brick-shaped object with Spanish writing on it, he vacuum sealed it, he wrapped it in foil, he then wrapped it in a bubble mailer, he then threw a rusty lug wrench in it, the only conceivable purpose of which would be to throw off an x-ray machine or to make it look like it was something other than drugs. If someone opened it, he then wrapped it in plastic wrap and foam, two more layers of boxes, and fake addresses and recipients on it. So why did you need the, if that was so compelling, why did you need the expert testimony? I think the expert testimony we did submit is just standard modus operandi testimony that this court has always affirmed, back to US v. Gill. Even though we do think it's a bit overreaching and we may affirm because of the lack of prejudice, because of the strength of the other evidence, isn't there, at some point, you're not, you should stop doing it? Your Honor, the government actually intended to submit pretty limited expert testimony in this case that stayed well within the confines of what this court has approved. For example, testimony about counter-surveillance being something that drug dealers do, the way they package things, the way they'll do drug deals in parking lots, use cash. I think this type of testimony really squarely fits within that and helps the jury understand just the facts that they're seeing. For example, why you would vacuum seal it. I think once that's explained, it's sort of intuitive, but I don't know that the average juror with no, you know, we see a lot of it, I don't know that the average juror would necessarily make that connection. I think the lug wrench thing is pretty peculiar until, you know, someone kind of explains that to you. The defendant's argument here raises, you know, a lot of areas of expert testimony that this court has found warrant additional scrutiny, like drug trafficking organization testimony, the 704B issue with unknowing courier testimony. Like, the government did not stray into any of that. It was very limited. The area I found problematic was the cross of Schmidt about the officer's truthfulness. I think that's a pretty close question. It's plain error review. Yes, Your Honor. I'll address that now. So, the government would argue that the district court did not plainly err in permitting that questioning because this court has only held, especially in the plain error context, the only error that the court has found is setting up a stark, basically requiring the defendant on cross-examination to call another witness a liar, or as the court has put it in, I think, Alcantara-Castillo, some sort of intentional deliberate falsehood or deceitful falsehood. And I think that's an important distinction to what happened here, where the purpose of these questions really was to confirm agreement on several discrete facts about which there was no agreement. It did not have the result of pitting the defendant's credibility against the agent's in the same way as saying, you're asking the jury, you have to call him a liar, and the jury has to believe that in order for them to believe your testimony. That's not what happened here, and I think this area of the case law has kind of developed around this idea that you shouldn't make a defendant choose between conceding the point or branding another witness a liar. Wasn't it more problematic here because the interview was an audio-video recorded? There was no written Miranda waiver. The notes were incomplete. There were a lot of problems with the interview in terms of recording it faithfully and verifying the Miranda waiver. So I think that goes more into whether it's a reversible error point. It's related to the plain error inquiry. Yes, Your Honor. So I think as an initial matter, even if the testimony in this case had all been the defendant told the agents he didn't know what was in this package, if that was the case about what the jury heard, he still would not have had any viable defense. Again, based on the physical evidence in this case, his defense of that's just how I wrap packages because I'm a careful person, I think any juror with any common sense would outright reject that. There's just no viable defense to be had. And I think that makes this case very different from the cases in which this Court has reversed, in which it really is a true credibility contest. And you can tell that in the closings where the government argument is, it boils down to credibility. And this is why you have to believe this person versus this person. That's not the case here. There was ample other evidence that would have led the jury to find the defendant guilty, which they did very quickly in this case. And I think another critical distinction from the cases where this Court has found suitable to reverse, in addition to the difference in how the questions were phrased, which I think is meaningful, in all of those cases, the prosecutor has then used those questions in particular ways in closings. So they've referenced the explicit questioning and made the problematic inference from it to the jury, or they vouched for the credibility of that particular witness involved to the jury. And that's what this Court has always focused on. I think in Alcantara-Castillo, the Court said, by asking him to comment on the credibility of witnesses against him, and then referring to the evidence, not referring to the, excuse me, of that witness's testimony, the government crossed the line. And the same thing in Combs. The government both vouched for the same witness, and sort of made the direct argument from it. You heard him call him a liar. You have to decide, you know, do you believe that? Do you not? That's not what the government did in this case. This testimony was never referenced again. The arguments were, the vast majority of the closing argument was focused on the packaging. And in rebuttal, after defense counsel commented a lot on the statement issues, and nothing really about defending the packaging, the rebuttal focused solely on the record of the documents that kind of relate to the interview. The notes, the reports. The government never went back to this testimony to say, you heard him say that all these things were true, therefore, you know, they're truthful. Or some sort of battle of credibility. It was really focused on the record, and exactly what the agents wrote contemporaneously with the interview. Which, as the district court noted, the crucial issue here, the crucial statement, that the defendant believed it was meth was written contemporaneously in the agent's notes at the time of the actual interview. So I think all of those factors together create a very, very strong record in this case that's very different from any time that this court has reversed under a plain error standard. And also just kind of briefly referencing, again, cases like Velarde Gomez, cases where this court has reversed, although some of those are harmless beyond a reasonable doubt standard, which is much higher. But those cases are all cases, as defense counsel noted, where there's drugs found in the panel of a car, or something to that effect. The defenses that defendants made in those cases would not be viable here because the comparison evidence would be their fingerprints were all over four levels of packaging surrounding the drugs that they then decided to package in a hidden compartment in the car. All their defenses about, you know, I left my car here, or the stories that were the testimony that was made in defendant's direct, that would just not be viable here. There's no viable argument like that when your fingerprints are surrounding the drugs in this way. I'm happy to address any other questions the court may have on any of the issues. If not, the government would submit on its briefing. Thank you. Thank you very much, counsel. I'll start with the cross-examination since I didn't address that initially. Alcantara is a plain error case. I think what the point of Alcantara is that it's saying, this court is saying, look, for many years now we have been holding that prosecutors should not cross-examine the defendant about whether another witness is truthful or not truthful, or whether their testimony is truthful. Don't ask them about other witnesses' testimony. We've made that clear. What Alcantara is saying is, look, we can't conceive of every creative way that the prosecutors may try to get around that rule by reformulating a question this way or reformulating a question that way. Just stop asking a defendant about other witnesses' testimony. That's the rule in this circuit. Alcantara says it's plain error. It's been like that again for over two decades. Government just stopped doing it and they did it again here. To say that it's not plain error because the questioning may have been a little different, this court has basically said enough. Don't do it anymore. There is plain error here. If the court thinks that that was plain error and then thinks that maybe the expert testimony was a little bit of overkill, maybe shouldn't have come in, we're starting to accumulate the errors here. These errors go to Mr. Schmidt's credibility. Even both that cross-examination and then this expert testimony that basically says he knew. The point of that testimony was to establish that he knew because when the district court said to the government, well, can you give me a little more flavor of what that testimony, why you need that testimony, what the prosecutor said is, I think it's particularly relevant in this case, especially in light of defendant's defense, that the confession is not what the government represents it to be. They're linking the expert testimony to the dispute about the confession. The dispute about the confession is what the plain error was on the cross-examination. All of these things build together into a cumulative type prejudice analysis. Even if the government had a strong case, they typically do have strong cases in these types of cases. When you start building those errors and it goes right to the defendant's credibility, which is a jury determination, we believe that Mr. Schmidt should get a new trial. Thank you, counsel. U.S. v. Schmidt The motion will be submitted.
judges: WARDLAW, PAEZ, SANCHEZ